UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR-06-4-B-W |
| | ) | |
| RICHARD J. THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANT'S TESTIMONY AT COMPENTENCY HEARING

Under indictment for tax evasion, Richard Thomas moves for a protective order, requesting that any testimony that he may give at an upcoming competency hearing be deemed inadmissible at trial. *Def.'s Mot. for Protective Order Regarding Def.'s Test. at Competency Hr'g* (Docket # 101) (*Def.'s Mot.*). The Court denies the motion.

**I.    STATEMENT OF FACTS**

On January 11, 2006, Richard Thomas was indicted on six counts of tax evasion by a federal grand jury. After initially representing himself, Mr. Thomas retained counsel and on April 24, 2006, Charles E. McFarland entered his appearance for Mr. Thomas. The issue of Mr. Thomas's competence was first raised on September 1, 2006, when Mr. McFarland filed a motion to continue trial to allow for a medical evaluation. *Def.'s Mot. to Continue Trial to Allow Medical Evaluation* (Docket # 50). The motion expressed concerns not only about Mr. Thomas's physical health, but also about mental health issues, including "memory loss and/or confusion in communications and episodes that indicate a possible altered state of consciousness." *Id.* at 2. The Court granted the motion to continue. *Oral Order* (Docket # 52).

After the physical issues were diagnosed and resolved, Mr. Thomas moved for a psychological evaluation. *Def.'s Mot. to Continue Trial to Allow Psychological Evaluation* (Docket # 72). His attorney expressed continuing concerns about his ability to stand trial or to enter a plea agreement. *Id.* at 1. Following receipt of a neuropsychological report, the Court ordered an independent evaluation to determine Mr. Thomas's competency. *Order for Psychological or Psychiatric Examination of Def.* (Docket # 88). The Court received the independent assessment on July 1, 2007. On July 9, 2007, the Court held a conference of counsel; at the conference, counsel agreed that it would be necessary to hold a competency hearing and agreed to brief the issues. The Defendant's motion to protect his competency hearing testimony was filed on August 6, 2007; the Government has objected.

## II.     DISCUSSION

### A.     Mr. Thomas's Contentions

The narrow issue is whether Mr. Thomas's testimony at his competency hearing should be deemed inadmissible at trial. After reviewing the history of this case and counsel's concerns for Mr. Thomas's competence, Mr. McFarland contends that Mr. Thomas's testimony "is crucial for both the issue of his understanding of the nature and consequences of the proceedings against him and for the demonstration of his memory deficiencies." *Def.'s Mot.* at 6. Mr. Thomas argues that if his competency hearing testimony is later admissible at trial, "[he] would be placed in the untenable position of choosing between protect[ing] his 5th Amendment right not to incriminate himself and his ability to show the [C]ourt his mental state prohibits him from standing trial." *Id.* at 7.

Mr. McFarland further suggests an alternative procedure. He notes that Mr. Thomas has been in touch with Lester John Ruston, a person he met while undergoing the psychological

evaluation. *Def.'s Reply to Government's Resp. to Def.'s Mot. for Protective Order Regarding Def.'s Test. at Competency Hr'g* (Docket # 104) (*Def.'s Reply*). Although Mr. Ruston is not a lawyer, Mr. Thomas apparently asked him to act as his co-counsel in his defense of the pending charges.[1] Despite the Court's Order striking Mr. Ruston's appearance, Mr. McFarland states that Mr. Thomas has continued to correspond with Mr. Ruston and he argues that "[i]n light of the fact that Thomas has had written contact with Ruston and Warden Sabol, it would behoove the Court to order his testimony regarding said letters and limit such testimony to information regarding the letters and his understanding of what he hoped to accomplish by seeking the assistance of a mental hospital inmate." *Id.* at 4. He suggests that this procedure would "enable the Court to observe Thomas's demeanor and would also protect any such testimony from being used by the government at trial thereby preserving Thomas's 5th Amendment right." *Id.*

Finally, Mr. McFarland suggests that the allocation of the burden will have a bearing as to whether Mr. Thomas will take the stand at his competency hearing. Acknowledging a split of authority on the issue, he cites *United States v. Dockins*, 986 F.2d 888, 892 (5th Cir. 1993), *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991), *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987), and *United States v. Belgarde*, 285 F. Supp. 2d 1218, 1220 (D.N.D. 2003) as standing for the proposition that the Government bears the burden to demonstrate competence.

### B.    Burden of Proof

It is surprising that the question of whether the defendant or the government bears the burden of proof on the issue of competency remains unresolved. The United States Supreme Court has addressed the issue only obliquely and there is no definitive First Circuit authority.

---

[1] Mr. Ruston filed a pro se entry of appearance on May 24, 2007. *Pro Se Notice of Appearance* (Docket # 94). On May 25, 2007, the Court struck the document. *Order Striking Notice of Appearance* (Docket # 95).

3

The weight of authority in other circuits places the burden on the government; however, a minority of courts has placed the burden on the defendant.

Under 18 U.S.C. § 4241(a), upon motion either by the defendant or the government to determine competency, a court is authorized to grant the motion "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." The statute clarifies that the standard of proof for this determination is "by a preponderance of the evidence," 18 U.S.C. § 4241(d), but it does not state whether the government or the defendant bears the burden.[2]

In *United States v. Hollis*, the Third Circuit succinctly explained the reason for placing the burden on the government:

> [F]irst, in order for a criminal proceeding to be fair, our system requires that a defendant be competent; and second, it would be both basically unfair as well as contradictory to say that a defendant who claims he is incompetent should be presumed to have the mental capacity to show that he in fact is incompetent.

569 F.2d 199, 205 (3d Cir. 1977). For those courts holding that the prosecution bears the burden of proof, the rule has become virtually self-evident. *Brown v. Warden, Great Meadow Corr. Facility*, 682 F.2d 348, 352 (2d Cir. 1982) ("[R]equiring the prosecution to prove a defendant's

---

[2] The Government cites *Cooper v. Oklahoma*, 517 U.S. 348, 355, 362 (1996) for the proposition that a defendant may be presumed competent and that the defendant has the burden of proving incompetence. *Cooper* addressed an Oklahoma statute that placed the burden of proving incompetency on the defendant and required him to establish his incompetency by clear and convincing evidence. *Cooper* affirmed *Medina v. California*, 504 U.S. 437, 449 (1992), which held that a state "may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Cooper*, 517 U.S. at 355. In *Cooper*, the Supreme Court concluded that a state could not, however, impose a clear and convincing standard of proof on the defendant. It also mentioned in dicta that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Id.* at 362. *Cooper* and *Medina* hold that a state can constitutionally place the burden of proof on the defendant (that same principle must apply to the federal government), but neither case holds that Congress placed the burden on the defendant in federal cases, though *Cooper* certainly suggests that it did.

competency to stand trial by a preponderance of the evidence reflects a proper balancing, as between the defendant and society, of the risk of an erroneous conclusion that a defendant is competent when in fact he is not."); *United States v. Makris*, 535 F.2d 899, 906 (5th Cir. 1977) ("There can be no question that in federal criminal cases the government has the burden of proving defendant competent to stand trial . . . ."); *United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992); *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1992); *United States v. Belgarde*, 285 F. Supp. 2d 1218, 1220 (D.N.D. 2003) ("The Government bears the burden of proving that the Defendant is competent to stand trial . . . .").

In *Cooper v. Oklahoma*, however, the United States Supreme Court in dicta suggested that the burden to prove incompetency rests with the defendant. 517 U.S. 348, 362 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence."). Although the Supreme Court in *Cooper* rejected a state statute that required a defendant to prove his incompetency by clear and convincing evidence, it reiterated the view, expressed in *Medina v. California*, 505 U.S. 437, 449 (1992), that a state could constitutionally "require the defendant to shoulder the burden of demonstrating his incompetence . . . ." *Cooper*, 517 U.S. at 355. Reviewing state law, *Cooper* cites only four states that place the burden on the prosecution to prove a defendant's competence. *Cooper*, 517 U.S. at 361 n.18. *Cooper* has cast doubt on whether the allocation of the burden of proof is as clear as the majority believes it to be. Adding to this uncertainty, in 2005 the Fourth Circuit, citing *Cooper*, concluded that the defendant bears the burden. *United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005); *see also United States v. Rudisill*, 43 F. Supp. 2d 1, 3 (D.D.C. 1999).

Addressing the question of competency at sentencing, Judge Jack Weinstein came to the same conclusion as the Fourth Circuit. *United States v. Gigante*, 996 F. Supp. 194, 199 (E.D.N.Y. 1997). After reviewing the uncertain state of the law, Judge Weinstein wrote that "[p]lacing the burden of proving incompetence at sentencing on the defendant is defensible as a matter of policy." *Id.* First, he noted that only a small number of defendants would be incompetent to be sentenced – a point not quite as compelling when assessing initial competency to stand trial or enter a knowing and voluntary plea. Second, he explained that "family and advisors to the proponent of the claim are likely to have more knowledge of his condition, justifying the rule that he is the party to whom the delegation of the burden should be made." *Id.* Finally, citing *Medina*, he observed that "only in the rarest of circumstances will allocating the burden to one party or the other at a competence hearing result in a different decision . . . ." *Id.*

The Eleventh Circuit recently expressed a third possibility: that the burden of proof rests with the moving party. In *United States v. Izquierdo*, the Court wrote: "[T]he relevant competency statute arguably contemplates that the burden will lie with the party making a motion to determine competency." 448 F.3d 1269, 1276-77 (11th Cir. 2006).

Absent controlling precedent from the Supreme Court and direct guidance from the First Circuit, the Court concludes that the burden rests on the government to demonstrate that the defendant is competent. First, *Hollis*'s point remains valid – an incompetent person by definition would not necessarily be sufficiently competent to prove his incompetence.[3] Second, although it is usually sensible to place the burden on the party with the greater access to evidence, the statute mitigates the government's disadvantage by providing a mechanism for an independent

---

[3] Of course, the law places the burden on the defendant to prove his insanity, and it could just as well be said that an insane person by definition would not be sufficiently sane to prove his insanity. But, unlike competency to stand trial, Congress has clearly provided that the allocation of the burden for the insanity defense rests with the defendant. 18 U.S.C. § 17(b); *see United States v. Owens*, 854 F.2d 432, 434 (11th Cir. 1988). If Congress intended the burden to be placed on the defendant to establish incompetency, it would have been easy to say so.

6

psychiatric examination and report. 18 U.S.C. § 4241(b). Third, as Judge Weinstein pointed out, the number of cases where the allocation of the burden of proof will make a difference will be limited; nevertheless, where a case is so close that there would be a difference in result from the allocation of the burden of proof involving a legal interest as fundamental as competency, it seems more consistent with basic fairness to place "the risk of an erroneous conclusion" on the government, not the defendant. *See Brown*, 682 F.2d at 352. Finally, although the Eleventh Circuit rule – placing the burden on the movant – has the ring of common sense, it does not address those instances where the court acts of its own motion under § 4241(a). Further, whether the government, the defendant, or the court makes the motion can be more a matter of happenstance or strategy than substance.[4]

### C. Fifth Amendment Concerns

Just as the parties agree that Mr. Thomas is not required to testify at the competency hearing, they acknowledge that if he takes the stand, he will be subject to cross-examination and his testimony may be admissible at trial. However, to avoid the possibility of self-incrimination, Mr. Thomas suggests that the Court issue a protective order, limiting his testimony to matters directly relevant to competency and directing the government not to question him about the merits of the pending charges.[5] The Court declines to issue such an order.

---

[4] Here, for example, the Defendant first raised the issue of competency by motion dated September 1, 2006. *Def.'s Mot. to Cont. Trial to Allow Medical Evaluation* (Docket # 50). The focus of that motion was primarily whether Mr. Thomas had a physical problem that was affecting his competency. *Id.* Mr. Thomas then filed a motion for psychological examination. *Def.'s Mot. to Cont. Trial to Allow Psychological Evaluation* (Docket # 72). He obtained his own neuropsychological evaluation and filed it with the Court. Defense counsel, however, expressed ongoing concerns about his client's competency and on March 2, 2007, the Court ordered an independent psychological evaluation. *Order for Psychological or Psychiatric Examination of Def.* (Docket # 88). In its current posture, it is debatable whether the motion leading to the competency hearing continues to be the defendant's motion or the Court's *sua sponte* motion.

[5] Mr. Thomas's reply memorandum suggests that his testimony be even more limited, namely, to only allow testimony regarding his relationship with Lester Jon Ruston. *Def.'s Reply*. However, at a telephone conference on September 7, 2007, defense counsel clarified that he had not intended to be so restrictive.

7

A competency hearing is held pursuant to 18 U.S.C. § 4247(d) "to determine the mental competency of the defendant." 18 U.S.C. § 4241(a). It is neither a trial to determine guilt or innocence nor a judicially-sanctioned discovery device. If the defendant elects to take the stand, questions from both the government and from defense counsel must relate to competency. With that said, the precise range of permissible questioning cannot be predicted.

The United States Supreme Court has stated the test:

> [W]hether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.

*Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal punctuation omitted). Section 4241 "adopts the competency test articulated by the Supreme Court in *Dusky* . . . ." *United States v. Wiggin*, 429 F.3d 31, 36 n.8 (1st Cir. 2005). The statute provides:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General [for hospitalization] . . . .

18 U.S.C. § 4241(d). Therefore, the test has two-prongs: (1) whether the defendant understands the proceedings against him; and, (2) whether he has sufficient present capacity to consult with counsel with a reasonable degree of rational understanding. *United States v. Giron-Reyes*, 234 F.3d 78, 80 (1st Cir. 2005).

To find a defendant competent, it is "not enough for the district court judge to find that the defendant is oriented to time and place and has some recollection of events." *United States v. Soldevila-Lopez*, 17 F.3d 480, 489 (1st Cir. 1994) (quoting *Dusky*, 362 U.S. at 402). Courts have considered such factors as: whether the defendant understood the nature of the charges and the differences, if any, among the charges; whether the defendant understood the roles of the judge,

8

jury, and lawyers; and the defendant's apparent ability to consult with his attorney. *See L'Abbe v. DiPaolo*, No. 97-CV-10905-GAO, 2001 U.S. Dist. LEXIS 18240, at *4-7 (D. Mass. Sept. 28, 2001). In connection with whether to hold a competency hearing, the Supreme Court considers relevant any "evidence of a defendant's irrational behavior, his demeanor at [the hearing], and any prior medical opinion . . ." *Drope v. Missouri*, 420 U.S. 162, 180 (1975), and similar evidence would seem relevant to the determination of competency.[6] Further, the Supreme Court has clarified that the critical question is the "present ability" of a defendant, not his ability some time in the past or future. *Id.* at 172 (quoting *Dusky*, 362 U.S. at 402). In sum, the court "shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant is incompetent." *Wiggin*, 429 F.3d at 36-37 (internal quotation omitted).

### III. CONCLUSION

If Mr. Thomas takes the stand, so long as the questions address his competency as the law defines it, the Court will allow them; if the questions are directed toward the merits of the charges, it will not. The Court denies the Motion for Protective Order Regarding Defendant's Testimony at Competency Hearing. (Docket # 101).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of October, 2007

---

[6] For example, in *United States v. Diaz*, the court, in concluding that the defendant was not competent, heard the psychiatrist's testimony, and in addition, observed that the defendant was suffering from both nervous tremors (extreme trembling of the entire body) and multiple lacerations, the latter of which the psychiatrist had testified were self-inflicted. 797 F. Supp. 81, 81 (D.P.R. 1992). In *Colpitt v. Cunningham*, despite the defendant's history of voluntary psychiatric admissions, the district judge concluded his testimony was "for the most part lucid and coherent and reflects plaintiff's conscious purpose at the time of the robbery to abscond with the victim's handbag for the purpose of acquiring money." 638 F. Supp. 1277, 1280 (D.N.H. 1986).