UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR-06-4-B-W |
| | ) | |
| RICHARD J. THOMAS. | ) | |

**ORDER ON DEFENDANT'S RENEWED MOTION FOR DISMISSAL AND MOTION
TO ENJOIN JEOPARDY LEVY AS WELL AS TAX COURT PROCEEDING ON
JEOPARDY LEVY**

Richard John Thomas, indicted on six counts of income tax evasion on January 11, 2006, asks the Court (1) to dismiss the indictment, (2) to enjoin a March 2007 Internal Revenue Service (IRS) jeopardy levy on certain assets, and (3) to enjoin proceedings in the United States Tax Court that Mr. Thomas himself initiated. *Renewed Mot. for Dismissal, or, In the Alternative, Mot. to Withdraw* (Docket # 144) (*Def.'s 2d Mot.*); *Mot. to Enjoin Jeopardy Levy as Well as Tax Ct. Proceeding on Jeopardy Levy* (Docket # 166) (*Mot. to Enjoin*). The Court concludes that the IRS levy against the Ichabod Trust does not violate Mr. Thomas's Sixth Amendment right to counsel or Fifth Amendment due process rights. The Court also concludes that Mr. Thomas's attempt to attack the validity of the IRS jeopardy levy constitutes an impermissible interposition of a civil defense in a criminal prosecution. The Court declines to enjoin the IRS and Tax Court proceedings.

**I.      STATEMENT OF FACTS**

This is the second time this Court has addressed defense motions based on the IRS levy. On November 21, 2007, the Court denied Mr. Thomas's motion to dismiss, since he still retained private defense counsel and, therefore, had failed to demonstrate any prejudice from the IRS levy. *Order on Def.'s Mot. to Dismiss* (Docket # 132) (*Order*). The Court will briefly restate the

salient facts.[1]   On January 11, 2006, a federal grand jury returned an indictment charging Mr. Thomas with two counts of evasion of payment of tax for 1995 and 1996, and four counts of evasion of assessment of tax for 1998 through 2001.   *Indictment* (Docket # 1).   The first two counts allege that Mr. Thomas received Notices of Deficiency from the IRS stating that he owed taxes for 1995 and 1996,[2] that he failed to pay such taxes, and that he evaded payment by transferring assets to two trusts, among other acts of concealment.   *Id.*

Following Mr. Thomas's failure to pay or properly contest these deficiencies, and after the government initiated this prosecution, on March 12, 2007 the IRS issued a Notice of Jeopardy Levy and Right of Appeal, which stated that Mr. Thomas owed $138,710.74 and $132,526.62 for the 1995 and 1996 tax years, respectively.   *Jeopardy Notice* (Docket # 110-3). Mr. Thomas received further notice on May 7, 2007 that he had a right to administrative review of the jeopardy levy.   *Collection Due Process Hr'g Request* (Docket # 144-3).   On May 21, 2007 Mr. Thomas, with the assistance of counsel, timely filed with the IRS a Request for a Collection Due Process Hearing.   *Id.*   The outcome was not favorable, and on August 7, 2007 the IRS sustained the jeopardy levy.   *Notice of Determination* (Docket # 110-3).   Mr. Thomas appealed this decision by filing an action in the Tax Court on September 5, 2007; the action is still pending. *Tax Ct. Petition* (Docket # 143-4).

The gravamen of Mr. Thomas's first motion to dismiss was that the IRS jeopardy levy eliminated his ability to "continue to retain chosen counsel and to pay for the defense as originally anticipated."   *Def.'s Mot. for Dismissal and, In the Alternative, an Evidentiary Hr'g* at 6 (Docket # 110) (*Def.'s 1st Mot.*).   This, he claimed, violated his Sixth Amendment right to

---

[1] For a more detailed description of the facts, see *Order on Def.'s Mot. to Dismiss.* (Docket # 132).

[2] Although Mr. Thomas continues to contest the quality of the government's proof of these notices, *Def.'s 2d Mot.* at 2-4, in ruling on Mr. Thomas's motion to dismiss, the Court need not decide whether or not the government's evidence is sufficient to support a verdict.   All the Court need decide is whether the imposition of the jeopardy levy deprives Mr. Thomas of his Sixth Amendment right to counsel or Fifth Amendment due process rights.

counsel and justified dismissal of the indictment.  The Court denied his motion on November 21, 2007, observing that Mr. Thomas had failed to show prejudice sufficient to warrant dismissal under *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).  As Mr. Thomas was still represented by private counsel of his choice, the Court refused to issue an advisory ruling as to whether he would be able to continue to employ counsel in the future.  *Order* at 5 (Docket # 132).  On January 8, 2008, Mr. Thomas's local counsel moved to withdraw, because Mr. Thomas had failed to pay his attorney's fees, and on April 14, 2008, Charles McFarland, his primary retained counsel, moved to withdraw on the same basis.  On May 2, 2008, the Court granted each motion and appointed Virginia Villa, the Assistant Federal Defender, to represent the Defendant.  On July 17, 2008, Mr. Thomas filed a supplemental memorandum in support of his renewed motion to dismiss and a motion to enjoin the jeopardy levy.  *Suppl. Mem. in Support of Def.'s 2d Mot.* (Docket #167); *Mot. to Enjoin*.

## II.    DISCUSSION

### A.    IRS Jeopardy Levy Violates Mr. Thomas' 6th Amendment Right to Counsel and 5th Amendment Due Process Rights, Requiring Dismissal of the Indictment

Mr. Thomas, whose private counsel has now withdrawn, claims that the prejudice he foretold has now come to pass.[3]  Accordingly, he argues that dismissal is appropriate because "the jeopardy levy issued by the IRS against assets of the Ichabod Trust violates his Sixth Amendment right to counsel and Fifth Amendment due process rights."  *Def.'s 2d Mot.* at 1.

---

[3]Mr. Thomas candidly allowed in his first motion to dismiss that he did not then "allege or argue that the mere fact that the IRS placed a jeopardy levy on funds automatically requires a dismissal." *Def.'s 1st Mot.* at 6 (citing *O'Connor v. United States*, 203 F.2d 301 (1953)).  Even though the Court agrees with Mr. Thomas and the *O'Connor* court that "there must be something more," *id.*, the Court is not persuaded that a violation causing constitutionally significant prejudice, if any, could ever be discovered before a conviction is had.  *See O'Connor*, 203 F.2d at 303 (noting that the defendant had failed on appeal to offer any proof "that he would or could have made any other defense than he did present, if the assessment had not been levied").

### 1.      The Sixth Amendment Right to Counsel

"'[D]ismissing an indictment is an extraordinary step.'" *United States v. Nai Fook Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)); *see Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (noting that the "power is appropriately reserved . . . for extremely limited circumstances."). Mr. Thomas argues that because he would be able to pay private counsel but for the IRS levy, the extreme remedy of dismissal is warranted to correct the alleged deprivation of his right "to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. Notwithstanding that the right to counsel is "a cornerstone of our national system of ordered liberty," courts have long recognized that "a criminal defendant's absolute right to counsel does not confer an absolute right to a particular counsel." *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir. 1977). Because the "essential aim of the [Sixth] Amendment is to guarantee an effective advocate," not to guarantee that each criminal defendant is represented by preferred counsel, the Supreme Court has noted that the "right to choose one's own counsel is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (U.S. 1988). Specifically, a defendant "may not insist on representation by an attorney he cannot afford." *Id.*; *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (stating that criminal defendants "who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts"). Accordingly, as Mr. Thomas is now represented by a court-appointed attorney, if it is the case that he lacks the means to retain his own counsel, he cannot make even a colorable claim under the Sixth Amendment.

Mr. Thomas's arguments against this inexorable conclusion are two: First, he asserts that it makes a constitutional difference that his inability to pay private counsel[4] is directly attributable to government action, and on that basis argues that his Sixth Amendment right has been infringed.[5]   Second, he alleges that the government action in levying on his assets violated constitutional guarantees of due process.   With regard to the first argument, Mr. Thomas steadfastly maintains that he was "not indigent when the criminal prosecution began and had available a source of funds to pay for his attorney fees and legal expenses for his defense." *Def.'s 1st Mot.* at 5.   Assuming this allegation were factually true, and that subsequent government action rendered him indigent, the Supreme Court in *Caplin & Drysdale* and a companion case, *United States v. Monsanto*, 491 U.S. 600, 615 (1989), held that similar allegations could not form the basis for a successful Sixth Amendment claim.

Because the sequence of events in Mr. Thomas's case is of particular importance to his argument, particular consideration will be paid to the sequence of events in *Caplin & Drysdale* and *Monsanto*, each of which concerned the constitutionality of 21 U.S.C. § 853, the criminal forfeiture statute.[6]   When Christopher Reckmeyer, the criminal defendant in *Caplin & Drysdale*, was charged with federal drug offenses, the district court entered a restraining order that froze specific assets that were potentially forfeitable under the statute.   *Caplin & Drysdale*, 491 U.S. at 619-20.   Notwithstanding the trial court's order, Reckmeyer paid the Caplin & Drysdale law firm $25,000 for pre-indictment legal services.   *Id.*   Subsequently, Reckmeyer pleaded guilty to the charges and the district court ordered the forfeiture of "virtually all" of Reckmeyer's assets.   *Id.*

---

[4] Mr. Thomas concedes he is currently unable to pay private counsel.  *See Def.'s 2d Mot.* at 8.
[5] Mr. Thomas makes clear that "it is not the District Court's action which deprives Mr. Thomas of his counsel of choice, but actions by the United States which has rendered him penurious and unable to maintain retained counsel." *Suppl. Mem. in Support of Def.'s 2d Mot.* at 2 (Docket # 167).
[6] The forfeiture statute provides, among other things, that one convicted of certain offenses shall forfeit "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; [and] (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation."  21 U.S.C. § 853(a).

Caplin & Drysdale sought to retain the $25,000, which was now subject to forfeiture, and to recover payment from the now penniless Mr. Reckmeyer for legal services rendered post-indictment. *Id.* at 621. The firm's arguments—that the Sixth Amendment requires an exception to forfeiture orders for funds used to defend against criminal charges—failed to convince both the Fourth Circuit sitting en banc, and the United States Supreme Court. *Id.* at 622.

Analogizing to a bank robber who may not finance his defense with the fruits of his crime, the Court stated that "[t]he money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense." *Id.* at 626. The Court further reasoned that "the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery," and that a forfeiture defendant's constitutional claim is no more persuasive than any similar claim the bank robber might make. *Id.* at 629-30. These inferences necessarily follow from the Court's interpretation of the statute's "relation back" provision[7] and its operation in Mr. Reckmeyer's case. Pursuant to that section, upon entry of the forfeiture order the Government's right in the forfeitable assets was prior and superior to Mr. Reckmeyer's when he transferred the $25,000 to his defense counsel. *Id.* at 627. Recognizing that the Sixth Amendment guarantees only the right to spend one's own money on the assistance of counsel, the Court concluded that the Sixth Amendment does not allow "criminal defendants to use assets that are the Government's . . . to pay attorney's fees, merely because those assets are in their possession." *Id.* at 632; *see United States v. Saccoccia*, 433 F.3d 19, 31 (1st Cir. 2005) ("Fees paid to attorneys from the criminal proceeds of their clients . . . may be reached by the government . . . .").

---

[7] The "relation back" provision, found in § 853(c), provides that "[a]ll right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section."

In *United States v. Monsanto*, 491 U.S. 600 (1989), the Court was asked to hold that if the forfeiture statute's pre-trial restraining order provision[8] did not contain an exception for funds necessary to defend against criminal charges, the statute interfered with a defendant's Sixth Amendment right to counsel of choice.  491 U.S. at 611-12, 614.  The Court refused to credit the argument that pre-conviction restraining orders raise constitutional concerns different from those addressed in *Caplin & Drysdale*.  *Id.* at 616.  Reasoning that there is no constitutional reason the government cannot do at the beginning of a trial what it may do at the end, the Court found no violation of the Sixth Amendment where a pre-trial restraining order that freezes a criminal defendant's assets is based upon a finding of probable cause that those assets are forfeitable.  *Id.*; *see United States v. Kneeland*, 148 F.3d 6, 11 n.1 (1998) (noting that "the Supreme Court has *soundly rejected* the proposition that the pre-trial seizure of assets that would otherwise be used to pay an attorney implicates the Sixth Amendment") (emphasis added).

Part of the *Caplin & Drysdale* analysis was based on the Court's observations that criminal defendants remain subject not only to federal taxation notwithstanding the Sixth Amendment, but also to IRS "jeopardy assessments"—the very kind of levy Mr. Thomas complains of here.  *Caplin & Drysdale*, 491 U.S. at 631-32 (noting that jeopardy assessments "have been upheld against constitutional attack").  Defendant attempts to distinguish *Caplin & Drysdale* by noting that the tax levies passage is dictum and that cases *Caplin & Drysdale* cites as support do not squarely stand for the proposition that IRS assessments could never violate a defendant's right to counsel.  *Compare Def.'s Reply to Gov't's Resp. to Def.'s 1st Mot.* at 6-8 (Docket # 125), *and Caplin & Drysdale*, 491 U.S. at 631 n.8 (citing *Avco Delta Corp. Can. Ltd. v. United States*, 484 F.2d 692 (7th Cir. 1973) (civil case); *Summers v. United States*, 250 F.2d

---

[8] The statute provides that "[u]pon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section."  21 U.S.C. § 853(e)(1).

132, 133-135 (9th Cir. 1957) (holding that the right to counsel does not include the right to an accountant); *United States v. Brodson*, 241 F.2d 107, 109-111 (7th Cir. 1957) (en banc) (holding that constitutional challenges should await the result of trial, and reversing as premature a district court's dismissal of indictment where jeopardy levy precluded defendant from retaining accountant to assist in defense of tax evasion charges), *cert. denied*, 354 U.S. 911 (1957)).

However, the Court need not rely on this dictum to decide against Mr. Thomas on his Sixth Amendment claim. The *Caplin & Drysdale* Court instructed that "there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense." *Caplin & Drysdale*, 491 U.S. at 630. No doubt equally strong is "the need of the government promptly to secure its revenues." *Phillips v. Comm'r*, 283 U.S. 589, 596 (1931). Relying on the reasoning of *Caplin & Drysdale*, *Monsanto*, and relevant sections of the Internal Revenue Code (I.R.C.), 26 U.S.C. § 1, *et seq.*, the Court decides that Mr. Thomas has no Sixth Amendment right to finance his defense with funds that rightfully belong to the United States.

The I.R.C. sets forth a variety of procedures that facilitate the orderly collection of income taxes. These procedures provide a taxpayer valuable opportunities to contest the IRS's calculation of his or her tax liability. However, there are adverse consequences if a taxpayer fails to take advantage of these procedural protections. For example, if a taxpayer, upon receiving a notice of deficiency, *see* 26 U.S.C. § 6212, fails to contest that deficiency in the Tax Court within ninety days, *id.* § 6213, the IRS must make an assessment of the deficiency, *id.* § 6203, and send notice and demand for payment to the taxpayer, *id.* § 6303. If the deficiency is not paid, a lien arises in favor of the United States on all real and personal property of the taxpayer as of the date of the assessment. *Id.* §§ 6321-6322. Importantly, the taxpayer cannot ask a

district court to determine his or her tax liability unless and until the tax is paid and a suit for a refund is initiated, *id.* § 7422, nor can a taxpayer commence a suit to restrain assessment or collection of any tax, except under very limited circumstances. *Id.* § 7421.

These provisions establish that since February 5, 2001, the date of the assessments, the United States has had a valid tax lien interest—superior to Mr. Thomas's own—in all his "property and rights to property, whether real or personal." 26 U.S.C. §§ 6321-6322; *see United States v. Murray*, 217 F.3d 59, 60 (1st Cir. 2000). Though Mr. Thomas has vehemently argued that the Government's proof of the February 5, 2001 assessments in this case is inadequate, *see supra* note 2, the Indictment alleges that the assessments were made, and that Mr. Thomas failed to pay them. *Indictment* at 3-4; *see United States v. Bohai Trading Co.*, 45 F.3d 577, 578 n.1 (1st Cir. 1995) (noting that when ruling on a motion to dismiss, the factual allegations in the indictment are taken as true). The Court must credit these allegations. *See Rucci v. United States INS*, 405 F.3d 45, 49 (1st Cir. 2005) ("Generally, a grand jury indictment definitively establishes probable cause."). What is more, Mr. Thomas has not argued that he ever timely paid or contested the deficiencies by petitioning the Tax Court within ninety days of receiving notice thereof.[9]  In fact, the Government alleges that when Mr. Thomas had one month remaining to contest the deficiency in the Tax Court, failing which he would be liable to the United States for the amount stated without judicial review until it was satisfied, Mr. Thomas transferred real property to the Ichabod Trust and titled personal property in the name of Hurst Bourne Trust. *Gov't's Resp. to Def.'s 1st Mot.* at 3-4 (Docket # 122).

According to *Monsanto*, a criminal defendant's assets can be frozen by a pre-trial restraining order so long as there is probable cause to believe they are forfeitable. 491 U.S. at

---

[9] Mr. Thomas contested the *existence of the assessments*: "As this Court well knows, Thomas has challenged the existence the [sic] alleged assessment on February 5, 2001." *Def.'s 2d Mot.* at 2. This is a far cry, however, from petitioning the Tax Court seven years ago to contest his *tax liability*; nowhere has Mr. Thomas alleged he did.

616.  The *Monsanto* Court reached this conclusion largely on the theory that there is no reason the government should be precluded before trial from doing what it can do after trial.  *Id.*  Given *Monsanto*'s reasoning, the fact that the IRS jeopardy levy froze Mr. Thomas's assets at some time after indictment and before trial cannot have any constitutional significance.  Furthermore, given the Government's status as tax lienor, Mr. Thomas simply cannot maintain in good faith the claim that the frozen assets are in any sense his property to dissipate as he pleases: "criminal defendants [may not] . . . use assets that are the Government's . . . to pay attorney's fees, merely because those assets are in their possession."  *Caplin & Drysdale*, 491 U.S. at 632.  On this basis, the Court concludes that Mr. Thomas's claim that the IRS jeopardy levy violates his Sixth Amendment right to counsel is without merit.

### 2.        Fifth Amendment Due Process

Mr. Thomas characterizes three independent arguments as raising due process concerns.  First, he argues that the IRS levy procedures are constitutionally inadequate.  Second, he alleges instances of prosecutorial misconduct that justify dismissal of the Indictment.  Finally, he argues that organizational changes within the IRS, which have dispensed with some offices and positions, have rendered the Service powerless to enforce certain of its own regulations and provisions of the I.R.C.

### a.        The Constitutionality of IRS Levy Procedures

With regard to the first argument, Mr. Thomas believes that the jeopardy levy "is based entirely on suppositions by the IRS and on alleged facts which have yet to be proven in any court."  *Def.'s 2d Mot.* at 4.  Mr. Thomas also contends that by providing for pre-notice levy, the procedures are essentially "an administrative summary proceeding" that "gave Mr. Thomas virtually no due process at all."  *Def.'s 2d Mot.* at 7.  These claims are of little consequence.  The

March 12, 2007 Notice of Jeopardy Levy and Right of Appeal instructed Mr. Thomas of his right to administrative review of the jeopardy levy and, following that, expedited judicial review pursuant to 26 U.S.C. § 7429, which section is entitled "Review of jeopardy levy or assessment procedures." *Jeopardy Notice* at 2. Mr. Thomas was apprised of his right to special judicial review of the reasonableness of the jeopardy levy. As there is no evidence that Mr. Thomas took advantage of that special provision applicable only to jeopardy levies, he should not be heard to complain now that the levy procedures violate the Fifth Amendment.

Similarly, Mr. Thomas is dissatisfied that the Secretary of the Treasury has the discretion to impose a jeopardy levy on his assets without notifying him first, based solely on the Secretary's unproven suppositions. Mr. Thomas is correct that 26 U.S.C. §§ 6331 and 6861 vest in the Secretary the power to determine that the collection of tax is in jeopardy, and that once this determination is made, the IRS may lawfully dispense with pre-levy notice to the taxpayer. *See* 26 U.S.C. § 6331(a)-(d). However, Mr. Thomas bears a heavy burden in attempting to demonstrate that these provisions violate Fifth Amendment guarantees of procedural due process. This is especially true because he has, with the assistance of counsel, pursued administrative and Tax Court review of the Secretary's jeopardy determination. Given that "[t]he constitutionality of the levy procedure . . . has long been settled," it is no wonder he has failed to convince the Court that the jeopardy levy procedure is unconstitutional. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 721 (1985) (internal quotation omitted); *see also Phillips v. Comm'r*, 283 U.S. 589, 595 (1931); *Castillo-Morales v. IRS*, 971 F.2d 744, 744 (1st Cir. 1992) (per curiam) (stating that "[a]ppellant's claim of entitlement to a court hearing prior to the seizure of his property by the IRS is foreclosed by [*Phillips*]"). The courts have declared these procedures constitutional specifically because they afford prompt post-levy administrative

11

and judicial review.  Mr. Thomas's failure to avail himself of these opportunities does not change the constitutional analysis.

### b.   Prosecutorial Misconduct

The gravamen of Mr. Thomas's claim of prosecutorial misconduct is that the IRS imposed a jeopardy levy against his assets while it proceeded with this criminal case.  For the same reasons that the imposition of a jeopardy levy does not violate the Sixth Amendment, it does not violate the Fifth Amendment.

### c.   Changes in IRS Organization

In his third due process argument, Mr. Thomas claims that because the IRS no longer employs "District Directors," no jeopardy levies may issue because "the IRS regulations that authorize a jeopardy levy require the involvement of a District Directors."[10]  *Suppl. Mem. in*

---

[10] To make his argument, Mr. Thomas strings together a series of statutes and regulations.  He starts with the general grant of authority to the IRS to make jeopardy levies.  26 U.S.C. § 6331(a) (stating that "[i]f the *Secretary* makes a finding that the collection of such tax is in jeopardy, . . . collection thereof by levy shall be lawful. . . .") (emphasis supplied).  "Secretary" means "the Secretary of the Treasury or his delegate."  26 U.S.C. § 7701(a)(11)(B).  A "delegate" is defined as "any . . . employee . . . of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context."  26 U.S.C. § 7701(a)(12).  IRS regulations provide that the district director has the authority to "make a finding that the collection of such tax is in jeopardy."  26 C.F.R. § 301.6331-1(a)(2).  The regulations further provide that to impose a levy, the "*district director*" must find that "the collection of any tax is in jeopardy" and that "*he or she*" may make notice and demand for payment and impose a levy.  26 C.F.R. § 301.6331-1(a)(2) (emphasis supplied).  As the Notice of Jeopardy against the Ichabod Trust was signed by the IRS Territory Manager, not the District Director or delegate, Mr. Thomas concludes that the levy itself was "on its face unlawful."  *Suppl. to Def.'s 2d Mot.* at 3.

In 2007, the Second Circuit Court of Appeals rejected a similar improper delegation argument.  *Mollison v. United States*, 481 F.3d 119, 125 (2d Cir. 2007).  The delegated authority of the Area Director and Territory Manager to approve a jeopardy levy is consistent with congressional and agency directive.  *See* Internal Revenue Service Restructuring and Reform Act of 1998, Publ. L. No. 105-206, § 1001(b)(2), 112 Stat. 685, 689-90 (1998) (stating that "[a]ll orders, determinations, rules, regulations, permits, agreements, grants, contracts, certificates, licenses, registrations, privileges, and other administrative actions (A) which have been issued, made, granted, or allowed to become effective by the President, any Federal agency or official thereof, or by a court of competent jurisdiction, in the performance of any function transferred or affected by the reorganization of the [IRS] or any other administrative unit of the Department of the Treasury under this section and (B) which are in effect at the time this section takes effect, or were final before the effective date of this section and are to become effective on or after the effective date of this section, shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked . . . ."); I.R.S. Delegation Order No. 5-3 at 20-22, 39-40 (Rev. 1), (11-08-2007) (authorizing Territory Managers to issue notices of levy when collection is in jeopardy and ratifying any action previously exercised consistent with the delegation order); I.R.S. Delegation Order No. 5-3 (Formerly DO-191, Rev. 3), 2007 WL 2612072 (09-22-2005) (same).

*Support of Def.'s 2d Mot.* at 2.  The Court will not reach this issue.  It is highly questionable whether Mr. Thomas may challenge the lawfulness of a jeopardy levy on this or any non-constitutional basis in the context of his defense of a criminal action for an alleged failure to pay taxes.  In essence, Mr. Thomas seeks to assert a civil defense to a criminal prosecution.  *See United States v. Edmiston*, No. 4:04-cr-15, 2008 U.S. Dist. LEXIS 6672, at *9-10 (E.D. Tenn. Jan. 29, 2008) ("The applicable federal law and the Federal Rules of Criminal Procedure do not allow criminal defendants to file civil counterclaims in criminal cases."); *Jackson v. City of Paterson*, No. 04-CV-3717 (PGS), 2006 U.S. Dist. LEXIS 59097, at *5 n.1 (D.N.J. Aug. 18, 2006) ("It is manifest that a defendant may not assert a civil counterclaim in the context of a criminal proceeding . . . .") (internal quotation omitted) (citing Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4474).

If Mr. Thomas believed the jeopardy levy was improperly imposed, section 7429(b) provides a procedure by which he could have challenged it.  26 U.S.C. § 7429(b).  But, as noted earlier, there is no evidence he did.  On the other hand, Mr. Thomas apparently filed an action with the Tax Court, and that action seems still to be pending.  *See Tax Ct. Petition* (Docket # 143-4).  Mr. Thomas may have raised the validity of the jeopardy levy with the Tax Court and the Tax Court's resolution of that question could affect the premise of his motion in this case.[11]

The resolution of the lawfulness of the jeopardy levy belongs there, not here, and the Court declines Mr. Thomas's entreaties to encroach upon the Tax Court's proper statutory jurisdiction pursuant to 26 U.S.C. § 6330(d)(1)(A).  As the Fifth Circuit explained when it refused to meddle in a civil matter pending in the Tax Court, "it is a clearly expressed

---

[11]Mr. Thomas could not maintain an action in this Court to enjoin the operation of the jeopardy levy. 26 U.S.C. § 7421(a) (stating that, except as provided in § 7429(b) and other inapplicable sections, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person. . . ."). Mr. Thomas cannot achieve through a civil counterclaim in the guise of a criminal motion to dismiss or enjoin in this case what the law otherwise prohibits.

congressional policy that courts should not intervene preemptively in the tax collection process." *Brittingham v. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1971). The *Brittingham* court found this policy expressed not only in the statutory bar to suit in 26 U.S.C. § 7421(a), *see supra* note 11, but also in the Federal Declaratory Judgment Act, which permits, "*except with respect to Federal taxes*," subject to a single exception not applicable here, "any court of the United States . . . [to] declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Given that Congress has significantly curtailed courts' jurisdiction with respect to tax controversies, the Court will not inquire into the lawfulness of the levy, or the extent to which the IRS followed its administrative protocols.

Instead, for purposes of this motion, the Court assumes that the IRS properly imposed a jeopardy levy against the Ichabod Trust and that Mr. Thomas cannot access the funds in the Trust to pay private counsel. Mr. Thomas is free to contend, as he has done, that there are criminal law consequences to the IRS jeopardy levy, but he is not free to challenge in the context of his criminal case whether the IRS properly perfected its levy. Perfection of the jeopardy levy is not an element of the Government's case against Mr. Thomas; the IRS is not a party to this proceeding; and, this criminal proceeding is not an IRS civil collection action.

**B.      Motion to Enjoin Jeopardy Levy as Well as Tax Court Proceeding on Jeopardy Levy**

Mr. Thomas's arguments to enjoin the jeopardy levy and to enjoin his own lawsuit now pending in the Tax Court essentially restate those made in his motion to dismiss. *See Mot. to Enjoin* at 2 (moving for the injunctions to provide the Court with an alternative to dismissal should the Court decide a narrower remedy for alleged constitutional violations is required).

Because the Court has decided that the levy does not violate Mr. Thomas's Sixth Amendment right to counsel, the Court denies Mr. Thomas's motion.[12]

## III.    CONCLUSION

The Court DENIES the Defendant's Renewed Motion for Dismissal, or, In the Alternative, Motion to Withdraw (Docket # 144); and the Court DENIES the Defendant's Motion to Enjoin Jeopardy Levy as Well as Tax Court Proceeding on Jeopardy Levy (Docket # 166).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of September, 2008

---

[12] The only case Mr. Thomas cites that would authorize an  injunction on a non-constitutional ground has nothing to do with jeopardy levies, or any other methods of collection.  Mr. Thomas claims that "once a referral has been made in a tax proceeding from the civil enforcement side of the [IRS] to the Criminal Investigation Division, the civil enforcement side must take no further action to assess or collect tax liabilities."  *Mot. to Enjoin* at 2.  As authority, Mr. Thomas cites *Moutevelis v. United States*, 727 F.2d 313, 314-15 (3rd Cir. 1984), in which the court noted the I.R.C. now has protections in place to prevent the IRS from using civil summons to encroach "upon the power of the grand jury or broaden the Justice Department's right to discovery in criminal cases."  727 F.2d at 315.  In short, the motion to enjoin fails to provide any well-developed non-constitutional arguments for the relief it seeks.