UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-06-4-B-W |
| | ) | |
| RICHARD THOMAS | ) | |

**SENTENCING ORDER**

Richard Thomas has pleaded guilty to evading the assessment of federal taxes, a violation of 26 U.S.C. § 7201. In anticipation of sentencing, the parties have raised a number of issues, including the Defendant's pre-plea release status, the Probation Office's description of his criminal conduct, the extent and nature of his current assets, the propriety of the assessments that led to the calculation of the amount of the tax loss and the establishment of the base offense level, the denial of the third acceptance point, the applicability of the sophisticated means enhancement, a request for a variant sentence, and the reasonableness of two proposed conditions for supervised release. The Court defers the bulk of these issues to the sentencing hearing. However, the Court agrees with the parties that the Presentence Report should be amended to accurately reflect the Defendant's period of pre-plea custody and to include certain agreed-upon facts. The Court rejects the Defendant's legal contentions concerning the Probation Office's calculation of the total tax loss.

**I. BACKGROUND**

On January 11, 2006, a Grand Jury of this District indicted Richard J. Thomas, charging him with six counts of tax evasion. *Indictment* (Docket # 1). On February 2, 2009, Mr. Thomas pleaded guilty to count six, an evasion of assessment count, and the Government agreed to dismiss the remaining counts. (Docket #s 221 & 222). On May 13, 2009, the U.S. Probation

Office (PO) filed a presentence investigative report (PSR).  The PSR calculated the intended tax loss to equal more than $400,000, but less than $1,000,000 for a base level offense of 20.  The PSR recommended that the offense level be increased two points because the offense involved sophisticated means and decreased two points because the Mr. Thomas accepted responsibility for the offense.  The total offense level remains 20.

On June 29, 2009, Mr. Thomas filed a Memorandum in Aid of Sentencing in which he raised several objections to the presentence report.  *Def.'s Mem. in Aid of Sentencing* (Docket # 235) (*Def.'s Mem.*).  The Government filed its response on July 7, 2009.  *Gov't's Resp. to Def.'s Mem. in Aid of Sentencing* (Docket # 236) (*Gov't's Resp.*).  Mr. Thomas replied on July 16, 2009.  *Def.'s Mem. in Reply to Gov't's Sentencing Mem.* (Docket # 237)  (*Def.'s Reply*).

Mr. Thomas's objections are both factual and legal.  Mr. Thomas objects to the description of his release status and to a portion of the offense description.  He also objects to the Probation Office's tax loss calculation and its listing of certain items as assets.  Mr. Thomas's legal objections challenge the amount of the loss leading to the base offense calculation, the two level sophisticated means enhancement, and the failure to grant the third point under U.S.S.G. § 3E1.1(b) for his acceptance of responsibility.  Additionally, Mr. Thomas requests a downward departure for family ties and responsibilities under U.S.S.G. § 5H1.6, and/or a variant sentence under 18 U.S.C. § 3553(a).  Finally, he objects to two special conditions during the period of supervised release.

II.    DISCUSSION

     A.    Factual Objections

          1.    Release Status

2

The PSR stated that Mr. Thomas was released on personal recognizance on January 19, 2006. *PSR* at 1. It failed, however, to credit him with the period from March 8-12, 2007 and April 11 - May 25, 2007, when he was in custody pursuant to court order. *Order for Psychological or Psychiatric Examination of Def.* (Docket # 88). Mr. Thomas objects to the failure of the PSR to take into account time already served. *Def.'s Mem.* at 1. The Government does not disagree. *Gov't's Resp.* at 1. The Court agrees that Mr. Thomas's release status should reflect the time during which he was in custody. The release status should read:

> Released on unsecured bail since January 19, 2006, except for March 8-12, 2007 and April 11-May 25, 2007, when he was in custody related to this case.

### 2.    PSR Descriptions

#### a.    Paragraph Three – "Disguised Ownership Interest"

The PSR contains the following language in paragraph three:

> The investigation revealed that the defendant spent money on personal items, such as a boat . . . . This money should have been applied to the taxes due and owing. <u>As to the boat, a 1989 Maxum, the defendant purchased it for $8,000 cash and another $500 cash for boat equipment/trailer, from a nephew in August 2000. He disguised his ownership interest by registering the boat in Maine in the name of Hurst Bourne Trust.</u>

*PSR* ¶ 3 (emphasis supplied). Mr. Thomas objects to the allocation of cash and the assertion that he disguised his ownership by placing the boat in a trust. *Def.'s Mem.* at 2. The Government does not object to an amendment to the PSR to eliminate the PO's characterization of the transaction as a disguise of ownership. *Gov't's Resp.* at 2. In view of the parties' agreement, the Court amends the portions of the PSR underlined above as follows:

> As to the boat, a 1989 Maxum, the defendant purchased it plus boat equipment and a trailer for a total of $8,500 cash from a nephew in August 2000. He registered the boat in Maine in the name of Hurst Bourne Trust.

#### b.    Paragraph Five – "Constitutional Beliefs"

The PSR contains the following language in paragraph five:

> The IRS investigation further revealed that defendant Thomas evaded the assessment of federal income taxes for the years 1998, 2000, and 2001.  Thomas again evaded the assessment of taxes by failing to file tax returns <u>based on his Constitutional beliefs</u> by extensive use of money orders.

*PSR* ¶ 5 (emphasis supplied).  Mr. Thomas objects to the phrase "based on his Constitutional beliefs" and affirmatively states that he prefers the language in paragraph two:

> [H]e believed he did not have to pay income taxes and that he had not found anything in the law that made him a person liable to pay income taxes.

*PSR* ¶ 2; *Def.'s Mem.* at 2.  The Government does not object to this change.  *Gov't's Resp.* at 2-3.

Based on the parties' agreement, the Court amends paragraph five of the PSR to read:

> The IRS investigation further revealed that defendant Thomas evaded the assessment of federal income taxes for the years 1998, 2000, and 2001.  Thomas again evaded the assessment of taxes by failing to file tax returns based on his belief that he did not have to pay income taxes and that he had not found anything in the law that made him a person liable to pay income taxes.

### c.      Reference to Trusts

Mr. Thomas objects to the PSR's references to various trusts in the description of the offense.  *Def.'s Mem.* at 2-3.  The Government agrees that Mr. Thomas's use of trusts is not specified in Count Six of the indictment.  *Gov't's Resp.* at 2.  The Court notes that Mr. Thomas's use of trusts is not included in the Joint Version of the Offense.  *Jt. Version of the Offense* (Docket # 219) (*Jt. Version*).  On the other hand, Mr. Thomas's use of trusts is a matter of record and the Court will not excise the PSR's factual references to the trusts to the extent his use of trust may be conduct that is otherwise relevant for sentencing purposes.  It remains to be seen what inferences, if any, the Court should draw from his use of trusts.

### 3.      The PSR's Listing of Assets

### a.      Life Insurance Policy

4

In itemizing Mr. Thomas's assets, the PSR lists the cash value of a life insurance policy equaling $25,000. *PSR* ¶ 40. Mr. Thomas notes, and the Government agrees, that Mr. Thomas's life insurance policy was surrendered on July 3, 2008,[1] and that the policy should not be listed as an asset. In addition, the monthly expense of $200 for maintaining the policy should be removed from Mr. Thomas's living expenses.

This alteration in the PSR does not, however, end the issue. There is still a question as to what happened to the $25,000 when Mr. Thomas surrendered the policy in July of 2008. The PSR states that "it is unknown where the funds were applied." *PSR* ¶ 45a. In its response, the Government states that "[i]t would be helpful for the Court to know the amount of money surrendered to the Defendant by the insurance company when the policy was surrendered and what happened to that money." *Gov't's Resp.* at 2-3. This factual question remains for development at the sentencing hearing.

### 4.    BMW

Although noting that the automobile is inoperable, the PSR ascribes a value of $7,000 to Mr. Thomas's 1995 BMW. *PSR* ¶ 40. Mr. Thomas claims it is a "parts car" with a value closer to $500. *Def.'s Mem.* at 4. The Government has "no independent basis on which to value the BMW." *Gov't's Resp.* at 3. The resolution of this factual issue will await the sentencing hearing.

### 5.    Real Estate

The PSR includes two real estate parcels, one on Ohio Street and the other on Broadway, both in Bangor, Maine. *PSR* ¶ 40. The PSR lists the value of the Ohio Street property at $200,000. *Id.* ¶ 45b. Mr. Thomas contends, and the Government agrees, that the value of the

---

[1] Mr. Thomas's Memorandum in Aid of Sentencing states that the life insurance policy was surrendered on June 3, 2008, *Def.'s Mem.* at 4; the PSR provides a date of July 3, 2008. *PSR* ¶45a.

Ohio Street Property is $7,700. *Def.'s Mem.* at 3; *Gov't's Resp.* at 4. Mr. Thomas notes, and the Government agrees, that the Broadway parcel should not be included as an asset in the PSR. *Def.'s Mem.* at 3; *Gov't's Resp.* at 4. In accordance with the agreement of the parties, the Court amends the PSR to reflect these facts.

### 6.      Government's Objection

Among the Defendant's assets, the PSR lists "coins, weapons, antiques" of unknown value. *PSR* ¶ 40. The Government observes that Mr. Thomas "should be able to provide the Court with a list specifying each item, when it was purchased and its cost at the time of purchase." *Gov't's Resp.* at 3. Mr. Thomas did not reply to this part of the Government's responsive memorandum. The resolution of this issue must await the sentencing hearing.

In addition, the Government states that an investigation revealed that Mr. Thomas obtained and used a number of postal money orders in May of 2006.[2] *Gov't's Resp.* at 4. Its memorandum lists three purchases of postal money orders in May 2006 each made out to Ventures International of Palm Harbor, Florida, totaling $3,000. *Id.* The Government says that it has "not been able to determine whether items of value were purchased." *Id.* Mr. Thomas did not reply to this issue and the matter remains unresolved pending the sentencing hearing.

### B.      Legal Objections

Mr. Thomas argues that PO's calculation of the tax loss is incorrect because the Government has not established a prerequisite—namely, a valid assessment for the years 1995

---

[2] The Court is not clear which investigation the Government is referring to, but assumes it must be the Government's investigation.

and 1996. He claims, therefore, that the determination of the base offense level is incorrect as a matter of law.[3] The Government disagrees and asserts that the calculation is accurate.

### 1.    Assessment for 1995 and 1996

Mr. Thomas pleaded guilty to violating 26 U.S.C. § 7201.[4] This section has been described as including "the offense of willfully attempting to evade or defeat the *assessment* of a tax as well as the offense of willfully attempting to evade or defeat the *payment* of a tax." *Sansone v. United States*, 380 U.S. 343, 354 (1965) (emphasis in original).[5] The offense to which Mr. Thomas pleaded guilty is evasion of the payment of a tax. This offense generally involves conduct designed to place assets beyond the Government's reach after a tax liability has been assessed, "such as by transferring assets abroad, placing assets in the names of others, or using cash transactions to conceal the existence of assets." *United States v. Mal*, 942 F.2d 682, 687 (9th Cir. 1991).

The Joint Version of the Offense in this case states in part:

> The Government would be able to prove that Defendant Thomas committed an affirmative act in furtherance of the willful attempt to evade the assessment of taxes. In addition to disagreeing with the law, Dr. Thomas attempted to conceal his income from the IRS. Defendant Thomas set up a Nevada corporation in the name of Three Crows Corporation in August 2001. On June 24, 2003, during a summons enforcement hearing in the U.S. District Court in Bangor, Maine, Dr. Thomas admitted under oath that the corporation was a holding company for his

---

[3]   The U.S. Probation Office's calculated a total tax loss of $411, 381.09 for a base offense level of 20. U.S.S.G. § 2T4.1(H); Revised Presentence Report at 4-6. Mr. Thomas calculates a tax loss of $155,071.78 for a base offense level of 16. *Def.'s Mem. in Aid of Sentencing* at 3 (Docket # 235).

[4]   Title 26 U.S.C. § 7201 provides:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

[5] In *United States v. Hogan*, the First Circuit concluded that § 7201 "defines two distinct crimes: (1) the willful attempt to evade or defeat the 'assessment' of a tax, and (2) the willful attempt to evade or defeat the 'payment' of a tax. The first crime includes evading the government's attempt to ascertain a tax liability. The second crime addresses an individual's evasion of the payment of that tax. The elements of both crimes are the same. . . ." 861 F.2d 312, 315 (1st Cir. 1988) (citations omitted).

chiropractic office.  Dr. Thomas used a bank account set up in the name of the corporation to deposit checks and to avoid having insurance companies issue Forms 1099 in his name.

*Jt. Version* at 5.

Mr. Thomas does not dispute that his failure to pay taxes in 1995 and 1996 constitutes relevant conduct for sentencing purposes.  Rather, Mr. Thomas argues that the Government's total tax loss should not include the tax, interest, and penalties from 1995 and 1996, because the Government failed to provide evidence of a valid assessment for these years.[6]  In particular, Mr. Thomas argues that case law does "not support a finding that a Form 4340 can substitute for the assessment of taxes as described in 26 U.S.C. § 6203."  *Def.'s Mem.* at 7.  Without a valid assessment, Mr. Thomas says that the Government has failed to "establish the necessary fact of assessment in order to hold him liable, even under a relevant conduct analysis, for the evasion of payment of assessed taxes."  *Id.* at 5.

Mr. Thomas's argument is without merit for two reasons.  First, First Circuit authority on tax assessments supports the conclusion that a Form 4340 with the date of assessment can be used to prove the existence of a valid tax assessment.  Second, even assuming a Form 4340 were inadequate from an evidentiary standpoint, a valid assessment is not an essential element to a violation of § 7201, and, by extension, the Government is not required to prove that a valid assessment occurred in order to sustain its burden to demonstrate relevant conduct.

### a.  Form 4340

Section 6203 of title 26 provides that "[t]he assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations

---

[6]  The tax loss to the Government determines the base offense level for sentencing purposes.  *See* U.S.S.G. § 2T1.1(a)(1) referencing the tax table at § 2T4.1.  Ordinarily, a tax loss calculation for a tax evasion offense does not include interest or penalties.  In willful evasion of payment cases brought pursuant to 26 U.S.C. § 7201, however, interest and penalties are included. U.S.S.G. § 2T1.1, cmt. 1.

prescribed by the Secretary." 26 U.S.C. § 6203. The corollary regulation requires that "[t]he assessment shall be made by an assessment officer signing the summary record of assessment." 26 C.F.R. §301.6203. The Tenth Circuit explained in *March v. Internal Revenue Service* that the "IRS has historically used Form 23C as the 'Summary Record of Assessments' or 'Assessment Certificate'" as explained in the [IRS] Manual"; however, "no regulation or statute requires that the 'copy of the record of assessment' mentioned in 26 U.S.C. § 6203 be made on Form 23C." 335 F.3d 1186, 1188 (10th Cir. 2003). "To ensure the taxpayer's ability to challenge alleged errors in the assessment process, the regulations allow the taxpayer to request a copy of certain parts of the assessment record." *Id.* In lieu of a Summary Record Assessment "the IRS may submit Certificates of Assessments and Payments on Form 4340. Form 4340 details the assessments made and the relevant date that a Summary Record of Assessment was executed." *Id.*

With the advent of the computer, the IRS "has for a number of years been engaged in making a transition in [its] assessment procedure from the general use of a manually prepared Form 23C to the general use of RACS 006." *Id.* (quoting *Roberts v. Commissioner of Internal Revenue*, 118 T.C. 365, 370 (2002)). "Like a Form 23C, RACS Report 006 is a summary record of assessment. However, RACS Report 006 is generated on a computer and then signed by an assessment officer on the date of assessment in accordance with 26 C.F.R. § 301.6203-1. Form 23C is now only used when the computer is unavailable." *Id.* (citations omitted).

In *United States v. Rupe*, the Fifth Circuit observed that a "Form 23C is a paper statement that contains the required assessment information and, before computerization, was used as the standard assessment record in satisfaction of IRS's statutory and regulatory obligations." 308 Fed. Appx. 777, 778-79 (5th Cir. 2009). The *Rupe* Court stated that "[e]ven though the IRS did

not present a Form 23C in this case, it did present to the Rupes a computer generated summary record, RACS 006, and a Form 4340 for the tax years."[7] *Id.* at 779.

In 1993, the First Circuit rejected the contention that an executed Form 4340 is insufficient to prove an assessment. *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1993). In *Geiselman*, the Government submitted a Form 4340 instead of a Form 23C for proof of an assessment.  Making an argument similar to Mr. Thomas's, Mr. Geiselman claimed that the Form 4340 could not be used to prove that a valid assessment was executed. *Id.*  The First Circuit rejected this argument and held that the Form 4340 was "presumptive proof of a valid assessment." *Id.*  (citations omitted).  The *Geiselman* Court wrote that the argument that the Form 4340 itself cannot prove a valid assessment was executed "falls beneath the weight of authority" and "Certificates of Assessments and Payments are routinely used to prove that tax assessment has in fact been made." *Geiselman*, 961 F.2d at 6 (citing cases) (internal punctuation omitted); *Stuart v. United States*, 337 F.3d 31, 35 (1st Cir. 2003) (argument "without legal support"); *see also March*, 335 F.3d at 1188; *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992).

In the case of Mr. Thomas, the Government has provided two Form 4340 forms, one from 1995 (Docket # 236-2), and the other from 1996 (Docket # 236-3).  Both forms indentify Mr. Thomas as the taxpayer by name and social security number; both indicate that a tax was assessed after Mr. Thomas failed to pay the amount set forth in a notice of deficiency; and both reference Form 23C/RAC 006 for the date of assessment.  The Form 4340s submitted by the Government include all the information necessary to prove that the IRS made a valid assessment against Mr. Thomas. *Geiselman*, 961 F.2d at 6.

---

[7] *Rupes* stated that two circuit courts in published opinions permit the IRS to use the RACS 006 and Form 4340 to satisfy its statutory and regulatory obligations.  *Rupe*, 308 Fed. Appx. at 779 (citing *March*, 335 F.3d at 1188-89; *Roberts v. Commissioner of Internal Revenue*, 329 F.3d 1224, 1228 (11th Cir. 2003)).

b.        **Element of the Offense**

The crime of evasion of the payment of a tax includes the following elements: willfulness, existence of a tax deficiency, and an affirmative act constituting evasion or attempted tax evasion.  *United States v. Hogan*, 861 F.2d 312, 315 (1st Cir. 1988).  The Government bears the burden of proving each element beyond a reasonable doubt.  *United States v. Lavoie*, 433 F.3d 95, 97 (1st Cir. 2005); *United States v. Brooks*, 174 F.3d 950, 954 (8th Cir. 1999) (citing *Sansone*, 380 U.S. at 351).  A valid tax assessment is neither an element of the crime, nor is it needed to support any of the three elements of the offense.  *See United States v. Silkman*, 156 F.3d 833, 837 (8th Cir. 1998) (stating "[w]hile an assessment *may* be used to prove a tax deficiency, in a payment evasion case, an assessment is not a necessary element of a payment evasion charge") (emphasis in original).  The First Circuit has recognized that a tax deficiency exists from the date a return is to be filed and that the deficiency arises by operation of law when the return is not filed.  *Hogan*, 861 F.2d at 316.  Thus, if the Government can show that a tax is due and owing, proof a formal assessment is not required.  *Id.*  (stating "where the government found a 'tax due and owing,' no formal assessment was necessary").[8]

The Government has submitted the notice of deficiency sent to Mr. Thomas on September 14, 2000, after he failed to file tax returns for years 1995 and 1996.  (Docket # 236-4).[9]  The notice informed Mr. Thomas of the amount for which he was liable in years 1995 and 1996 and provided the procedure for contesting this determination.  The notice further stated that if the amount owed was not paid or contested within ninety days, Mr. Thomas would be assessed and billed for the deficiency.  Ninety days came and went and Mr. Thomas did not contest or pay

---

[8]  Mr. Thomas has not challenged the Government's ability to prove willfulness or an affirmative act of the evasion of taxes.  His argument centers on the existence of a tax deficiency.
[9]   The amount of the deficiency for 1995 is $44,937, excluding interest and penalties, and $50,496, excluding interest and penalties, for 1996.

the deficiency. Thus, the taxes remained due and owing, and the deficiency arose by operation of law on December 13, 2000. *Id.* Because the Government has demonstrated a valid assessment for 1995 and 1996 through the introduction of the Form 4340 forms, and has shown that a tax liability for these years was due and owing, the Government has proved a tax deficiency for these years. The tax loss to the Government in this case properly includes the years 1995 and 1996.

### 2. Denial of Third Acceptance Point

Mr. Thomas objects to the denial of the third point for acceptance of responsibility, claiming that the Government promised to move for the third point. The pertinent terms of the Plea Agreement read:

> The parties agree to recommend that the Court find that the defendant has accepted responsibility for the offense of conviction, and that the Court should reduce the defendant's Adjusted Offense Level by three levels under U.S.S.G. § 3E1.1 if the Offense Level is 16 or greater and by two levels if the Offense Level is 15 or less. The government reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing, the defendant (a) fails to admit a complete factual basis for the plea, (b) fails to truthfully admit his conduct in the offense of conviction, (c) engages in conduct which results in an adjustment under U.S.S.G. § 3C1.1; (d) falsely denies relevant conduct for which the defendant is held accountable under U.S.S.G. § 1B1.3; or (c) engages in any conduct in violation of his conditions of release. Defendant understands that he may not withdraw the guilty plea if, for any of the reasons listed above, the government does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

*Agreement to Plead Guilty* at 3 (Docket # 221). According to the terms of the non-binding plea agreement, the Government has reserved the right not to recommend a reduction, if prior to sentencing Mr. Thomas engages in certain conduct. *Gov't's Resp.* at 11. As Mr. Thomas has not yet been sentenced, his objection to the denial of the third acceptance point is premature.

At the same time, the Court observes that the terms of the Plea Agreement address only whether the Government is compelled by its own agreement to move for a third point, not

whether the Court should grant the motion.  If the Government moves for the third point, Mr. Thomas's objection is moot.  If the Government refuses to do so, the Court will address whether the Plea Agreement requires it make the motion.  If the Court concludes that under the terms of its Plea Agreement, the Government must move for the third point or if it does so voluntarily, the issue will become whether the Defendant is entitled to the third point under the criteria set forth in U.S.S.G. § 3E1.1.  These issues cannot be resolved until sentencing.

### 3.    Objection to Two Level Increase for Sophisticated Means

The PSR recommended a two-level increase under U.S.S.G. § 2T1.1(b)(2) because the offense "involved sophisticated means."  *PSR* at 7.  Mr. Thomas objects to this proposed enhancement, arguing that his use of money orders and cash was an unsophisticated way to evade the assessment of taxes.  *Def.'s Mem.* at 12-13.  The Government says that it "continues to argue that Defendant's acts of evasion, primarily the extensive use of cash, cashiers' checks and money orders, existed but were not sophisticated."  *Gov't's Resp.* at 12.  Nevertheless, the Government notes that Mr. Thomas's establishment of a corporation, for example, demonstrates that his tax evasion scheme was becoming more sophisticated.  *Id.* at 13.

The Sentencing Guidelines define "sophisticated means" in a tax evasion cases as "especially complex or especially intricate offense conduct . . . such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts."  U.S.S.G. §2T1.1(b)(2), cmt., app. n. 4.  The Court will address at the sentencing hearing whether it will apply the two-level sophisticated means enhancement under U.S.S.G. § 2T1.1(b)(2).

### 4.    Request for Downward Departure/Variant Sentence

Mr. Thomas requests a downward departure at sentencing so that he can continue to provide services to his chiropractic patients and care for his elderly mother.  *Def.'s Mem.* at 13-16.  The Government objects.  *Gov't's Resp.* at 13-15.  The Court will address this issue at the sentencing hearing.

### 5.      Objections to Terms of Supervision

Finally, Mr. Thomas objects to two recommended conditions of supervised release—that he report to the IRS and file returns for any delinquent years, including tax years 1995 through 2008, within 30 days of the sentence (condition 5), and that he satisfy his tax liability to the IRS and comply with any repayment schedule established by the IRS (condition 6).  *Def.'s Mem.* at 17-19.  The Government contends that the additional conditions are reasonable, but states it would not object to an extension of time to allow Mr. Thomas to comply with condition 5.  *Gov't's Resp.* at 15-17.  The Court will address the Defendant's position at the sentencing hearing.

## III.    CONCLUSION

The Court GRANTS the Defendant's motion to amend the Presentence Report to allow him a credit for time previously served and to reflect certain agreed-upon facts.  The Court DENIES the Defendant's motion to amend the Presentence Report to reduce the recommended base offense level to eliminate the assessments for the tax years 1995 and 1996.  The Court DEFERS ruling until the sentencing hearing on the remaining issues.  The Court directs the Clerk's Office to schedule this case for sentencing.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of October, 2009

14